Dear Mayor Youngblood:
This letter is in response to your request for an Attorney General's opinion regarding the Grant Council on Aging. According to your request, the Town owns a parcel of land containing a building structure. The Town desires to donate the land and building to the Grant Council on Aging so that the Council on Aging program will remain in Colfax and will not be moved to another location. Specifically, you are interested in determining whether the Town of Colfax can donate or otherwise transfer the property, which is owned by and titled in the name of the Town, to the Grant Council on Aging, Inc.
Implicitly, your request must be examined in light of La. Const. Art.VII, Sec. 14 (A), which generally prohibits the state and its political subdivisions from loaning, pledging or donating its funds, credit, property or things of value to or for any person, association or corporation, public or private. This constitutional provision has been interpreted by the Louisiana Supreme Court in City of Port A lien v Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983), which held that the Constitution is violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so. We note, however, that La. Const. Art. VII, Sec. 14 (B) provides certain exceptions to the prohibition contained in Sec. 14 (A) and states, in pertinent part: Nothing in this section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy . . ."
Attorney General's opinions have previously determined that Parish Councils on Aging, and the work they do, can be categorized as programs of social welfare for the aid and support of the needy. Attorney General's Opinions Nos. 98-238, 77-240. Accordingly, it our opinion that that the Constitution does not prohibit political subdivisions such as the Town of Colfax from providing funds or property to a Parish Council on Aging to be used for their program(s) of social welfare for the aid and support of the elderly.
We must caution you, however, that this office has typically characterized the term "needy" to mean low income, impoverished or indigent. Further, we have recognized as a threshold requirement, that a systematic program with objective eligibility requirements should be implemented to insure that the program in question serves those that are truly needy. Attorney General's Opinions Nos. 97-236, 94-157, 92-543 and 82-115. Therefore, it is our advice that the Town enter into a cooperative endeavor with the Grant Council on Aging in order to insure that the Council on Aging will provide services for the needy elderly of Colfax to an extent commensurate with the value of the land and building that will be transferred. Enclosed herewith is a copy of Attorney General Op. No. 93- 787, which discusses cooperative endeavors in some detail.
We trust the foregoing to be of assistance to you and the Town of Colfax. If this office can be of assistance in other areas of the law, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI;JMZB:jv Enclosure
OPINION NUMBER 93-787
January 7, 1994
90-A-2 PUBLIC FUNDS — Loans, Pledge or Grants
La. Const. Art. VII, Sec. 14
General discussion of cooperative endeavors and the factors which must be present for City of Lafayette's contracts with "external agencies" to be constitutionally sanctioned.
Mr. Michael D. Hebert Assistant City Attorney 600 Jefferson Street, Box 52 Suite 504 Lafayette, Louisiana 70501
Dear Mr. Hebert:
In your capacity as an Assistant City Attorney to the City of Lafayette, you have requested the opinion of this office regarding contracts of the City of Lafayette with private and/or non-profit entities, referred to in your letter as "external agencies". You advise that the City of Lafayette, in furtherance of the duties and purposes of the City's Department of Community Development, has entered into, and will enter into, certain contracts with external agencies for the provision of various social services or educational, recreational, or cultural programs within the City of Lafayette.
Specifically, you have asked this office to address whether such contracts constitute prohibited donations of public funds under ArticleVII, Section 14 of the Louisiana Constitution of 1974.
According to your letter, the funds paid to each external agency by the City of Lafayette are paid only in accordance with the contract, and payments are only made for services which are consistent with, and supportive of, the duties and functions of an established department of the City of Lafayette. You also advise that all services provided by the external agencies will be provided within the City of Lafayette. Furthermore, you advise that each external agency is required to make progress reports and an accounting to the City, and that each external agency is subjected to audits by the City in order to verify that the funds are being used for the public purpose set forth in each contract.
Your question raises a number of issues, as it is presented broadly, as opposed to being limited to a particular contract, for particular services, with a particular "external agency".
As I am sure you are aware, the mere execution of a document nominated as a "contract" does not obviate "the constitutional prohibition of donations of public funds by political subdivisions. However, Art. VII, Sec. 14 (C) authorizes the state and its political subdivisions to engage in "cooperative endeavors" for a public purpose with other governmental agencies, public or private corporations, or individuals. This office has previously opined that a constitutionally sanctioned cooperative endeavor must meet a three part test: (a) the public agency has a legal obligation to expend public funds, (b) the expenditure must be for a public purpose, and (c) the expenditure must create a public benefit proportionate to its cost. Attorney General's Opinion No. 93-164.
In our opinion, contracts such as the ones you describe can be considered constitutionally sanctioned cooperative endeavors as long as the contracts meet the three part test set forth above.
As you are aware, the requirement for a "legal obligation" for the expenditure or transfer of public funds has been recognized by the Louisiana Supreme Court in City of Port Allen v. Louisiana Municipal Risk Management Agency, Inc., 439 So.2d 399 (La. 1983). As stated in the City of Port Allen decision, "even if political subdivisions cooperate for a public purpose, they still may not give away their assets merely for a public purpose." As we interpret that decision, the "legal obligation" referred to in City of Port Allen must be present even if the "external agency" provides a public benefit or service, and even if the services provided are consistent with, and supportive of the duties and functions of an established Department of the City of Lafayette".
This office has construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the purpose and power for a particular expenditure of public funds be "sanctioned" or "authorized by law" or in the "discharge of a legal duty". Attorney General's Opinion No. 92-204. Our opinions also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. Attorney General's Opinions Nos. 92-543, 92-494, 92-402, 92-204.
Your letter suggests that the Supreme Court, in City of Port Allen, may not have been attempting to announce the requirement of a `legal obligation' as a hard and fast rule. We respectfully disagree with your suggestion, as the Court has subsequently adhered to its requirement of a `legal obligation' or `legal duty'. In Guste v. Nicholls College Foundation, 564 So.2d 682 (La. 1990), a transfer of public funds by the Nicholls College Foundation was held to be "given and accepted `under the authority of the constitution and laws of this state' in furtherance of a governmental purpose", as opposed to a donation. The Court concluded that the funds were "transferred in the discharge of the Federation's constitutional or legal duties", and were accepted by the Foundation, "with a commitment to assist the Federation in carrying out its constitutional and legal duties". (Emphasis added).
This office's recognition of the necessity of a "legal obligation" for the transfer of public funds is illustrated by Attorney General's Opinion No. 92-494, which provides that an assessor has no "legal obligation" to fund a teen organization or a mental health unit, and by Attorney General's Opinion No. 92-204, which provides that a hospital service district cannot pay the Chamber of Commerce dues of its hospital physician.
You have also requested this office to give consideration to the argument that "remunerative donations" may not be constitutionally prohibited. In light of our opinion that a legal obligation for the expenditure of public funds must be present if same is to be considered constitutionally sanctioned, a discussion of "remunerative" donations is pretermitted.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0373n